**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 29, 2026**

# In the Court of Appeals of Georgia

A25A2141. THE STATE v. CARTER.

GOBEIL, Judge.

In the instant appeal, the State argues that the trial court erred by denying its motion to correct a void sentence. More specifically, the State contends that the court was unauthorized to deviate from the mandatory sentencing requirements under OCGA § 17-10-6.2 by imposing a sentence of only probation against Aliyanna Carter after she entered a guilty plea to the charges of interstate interference with custody and child molestation. For the reasons that follow, we now vacate the trial court's order and remand for further proceedings not inconsistent with this opinion.

"[W]hether or not to downwardly deviate under OCGA § 17-10-6.2 rests in the sound discretion of the trial court, so long as the requirements [under the statute] are

met. However, if the sentencing issue turns on the proper interpretation of OCGA § 17-10-6.2, it is a question of law, which we review de novo." *State v. McCauley*, 353 Ga. App. 94, 96 (834 SE2d 567) (2019).

The State's proffer at Carter's plea hearing, which Carter did not dispute, showed that on August 15, 2023, the Harrison County sheriff's office in Mississippi contacted law enforcement in Douglas County with regards to a 14-year-old girl, B. N., who lived with her grandparents in Mississippi, but had run away from home. B. N. previously had run away from home in May 2023, and was later located in Douglasville with Carter, who was 21 years old at the time. Carter was charged with and pleaded guilty to misdemeanor interference with child custody in connection with the May 2023 incident.

In the instant case, in August 2023, law enforcement made contact with Carter's uncle's girlfriend, who confirmed that Carter lived with her, and B. N. had been staying at her house for the past few weeks. Officers located Carter and B. N. in the residence together. Upon being taken into custody, B. N. disclosed that she had been in a romantic relationship with Carter for approximately a year and Carter had kissed her several times while they were in Douglas County. According to B. N.,

Carter had come to Mississippi in June and was hiding in B. N.'s grandparents' house. After the grandparents found out, Carter and B. N. took a bus to Georgia and had been staying at Carter's residence since that time. Carter also admitted to law enforcement that she was in a romantic relationship with B. N., and a search of Carter's phone uncovered pictures of Carter and B. N. kissing, including images that had been taken in Douglas County.

A grand jury indicted Carter for interstate interference with custody for taking B. N. away from her grandparents (Count 1) and child molestation for kissing B. N. (Count 2). At the plea hearing, the State advised Carter that this was a negotiated plea of guilty, which meant that the State would make a recommendation, as previously outlined to Carter, but the trial court was not bound to accept the recommendation and the court retained the discretion to sentence Carter up to the statutory maximum for each count. The State outlined in open court that the plea agreement called for Carter to plead guilty to both counts, with a total sentence of twenty years with Carter serving the statutory minimum of five years in custody for child molestation. Carter indicated that she understood the terms of the sentence and entered a negotiated guilty plea to both charges. Carter's criminal history consisted of a single

misdemeanor count of interference with child custody involving B. N., which stemmed from the May 2023 incident, to which Carter pleaded guilty. Carter's counsel explained that Carter was very immature for her age and was engaged in "teenagery behavior" with B. N. despite her actual age. After hearing from both sides, the trial court directly posed questions to Carter, including how she met B. N. and concerning Carter's living situation.

Following a brief recess, the court explained that in sentencing Carter, the court had "taken some time to consider the circumstances in [Carter's] case, the charging document and what was charged as far as the allegations between [Carter] and [B. N.] in this case, as well as [Carter's] lack of criminal history." The trial court sentenced Carter to twenty years' probation on Count 2 and a five-year probationary sentence on Count 1 to run concurrently to Count 2. Carter also was required to register as a sex offender. The State did not object to the court's pronouncement of sentence. The trial court entered the written sentencing order on May 12, 2025.

On May 23, 2025, the State filed a motion to correct void sentence on Count 2, arguing that Carter's offense involved bringing B. N. from Mississippi to Georgia, and thus Carter did not meet one of the conditions that would permit the trial court

4

to exercise its discretion to deviate from the mandatory sentencing requirements — namely, that the offense not involve the transportation of the victim, OCGA § 17-10-6.2(c)(1)(E). The State further noted that the parties had not agreed to a deviation from the mandatory minimum sentence requirement.

At the hearing on its motion to correct void sentence, the State asked the trial court to vacate Carter's sentence and resentence her in accordance with the law. Alternatively, if the trial court concluded that it was authorized to impose a downward deviation, the State asked the court to issue a written order with its findings as required under OCGA § 17-10-6.2(c)(2). Carter's counsel countered that Carter did not "transport" B. N. from Mississippi to Georgia, but merely accompanied B. N. on the journey, and therefore, Carter was not disqualified from a downward deviation to her sentence.

The trial court denied the State's motion to correct void sentence. As stated in the written order:

> The [c]ourt deviated from the mandatory minimum because of the failure to prove the purpose behind the transportation of the victim, who was not forced to accompany Carter, as well as Carter's obvious mental immaturity that while not legally narrowing the gap between her and the victim, did in a practical sense. In sum, while Carter admitted guilt as to

the allegations, this case was unlike most other cases of child molestation. The [c]ourt's duty is to fashion sentences that are fair and just based on the evidence before it, which it did, using a deviation to reduce the sentence below the mandatory minimum for child molestation.

The State filed the instant appeal.

1. As an initial matter, we consider our jurisdiction to hear this appeal. See *State v. Perry*, 362 Ga. App. 825, 827 (870 SE2d 241) (2022) (an appellate court is required to inquire into its jurisdiction even if the issue is not raised by the parties). At the plea hearing, the trial court never explicitly stated on the record that it was rejecting the plea deal. However, it did so by implication when it sentenced Carter to a total sentence of twenty years' probation, which was below the agreed upon total in the plea deal of twenty years with Carter serving the statutory minimum of five years in custody for child molestation. There is no dispute that Carter pleaded guilty to both charges under a negotiated agreement with the State. The record shows that the State and Carter agreed to the proposed sentence after negotiations; that plea counsel and the trial court referred to the plea as negotiated; that the plea was never referred to as nonnegotiated; and that the trial court stated on the final disposition that the plea was

negotiated. There is no indication in the record that the court told Carter that she had a right to withdraw her plea as required under Uniform Superior Court Rule ("USCR") 33.10.[1] See *Smith v. State*, 239 Ga. App. 776, 777–78 (521 SE2d 911) (1999) ("The informational requirements of USCR 33.10 must be satisfied by explicit statements, not by vague statements or implication."). Additionally, the State was never put on notice that the court intended to reject the plea deal or allowed an opportunity to present evidence in support of the agreed-upon sentence. See *Maddox v. State*, 374 Ga. App. 736, 739 (913 SE2d 856) (2025) ("[I]t is the State's burden to present evidence of the absence of any statutory factor [in OCGA § 17-10-6.2(c)(1)] that would prohibit a downward deviation in sentencing."); see also *State v. Kelley*, 298 Ga. 527, 531 (783 SE2d 124) (2016) ("where a trial court intends to reject a

---

[1] USCR 33.10 provides:

If the trial court intends to reject the plea agreement, the trial court shall, on the record, inform the defendant personally that (1) the trial court is not bound by any plea agreement; (2) the trial court intends to reject the plea agreement presently before it; (3) the disposition of the present case may be less favorable to the defendant than that contemplated by the plea agreement; and (4) that the defendant may then withdraw his or her guilty plea as a matter of right. If the plea is not then withdrawn, sentence may be pronounced.

7

sentence recommended as part of a plea agreement to a lesser charge, the trial court must, on the record and before sentencing, inform the State of its intention and allow the State to exercise its authority to withdraw its consent to the plea and demand a trial").

However, even if the trial court erred by failing to follow the necessary steps in rejecting the negotiated plea, any such claim of error on this basis "amounts to an allegation that the sentence is voidable, not an allegation that it is void" absent a showing that the "trial court was without jurisdiction to impose the sentences or because the sentences were contrary to that required by law." *State v. Scott*, 370 Ga. App. 40, 42–43 (894 SE2d 512) (2023).

"In Georgia, the State has only a limited right of appeal in criminal cases. If the State attempts an appeal outside the ambit of OCGA § 5-7-1(a), the appellate courts do not have jurisdiction to entertain it." Id. at 41 (punctuation omitted). Here, the State appeals pursuant to OCGA § 5-7-1(a)(10), which provides that the State may appeal "[f]rom an order, decision, or judgment issued pursuant to subsection (c) of Code Section 17-10-6.2." In its motion to correct void sentence and on appeal, the State argues that the trial court erred by departing from the mandatory minimum

sentencing requirements in OCGA § 17-10-6.2, and therefore, Carter's twenty-year term of probation for child molestation is void. See *Ward v. State*, 299 Ga. App. 63, 64 (682 SE2d 128) (2009) ("A sentence is only void when the trial court imposes a punishment that the law does not allow.") (punctuation omitted); *Hood v. State*, 343 Ga. App. 230, 233–34(1) (807 SE2d 10) (2017) (defendant's sentence of probation for child molestation conviction was void where the court did not comply with the requirements of OCGA § 17-10-6.2(c)(1)). We therefore have jurisdiction to consider the State's appeal under OCGA § 5-7-1(a)(10), and now turn to the merits.

2. In construing a set of statutory provisions, "we look at its terms, giving words their plain and ordinary meaning, and where the plain language of a statute is clear and susceptible of only one reasonable construction, we must construe the statute according to its terms." *Mahalo Inv. III, LLC v. First Citizens Bank & Trust Co.*, 330 Ga. App. 737, 738 (769 SE2d 154) (2015) (punctuation omitted). Moreover, "in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." *Tew v. State*, 320 Ga. App. 127, 129 (739 SE2d 423) (2013) (citation omitted).

Under OCGA § 16-6-4(b)(1), any person convicted of a first offense of child molestation shall be imprisoned for not less than five nor more than twenty years and is also subject to the sentencing conditions contained in OCGA § 17-10-6.2. Subsection (b) of OCGA § 17-10-6.2 mandates that a person convicted of a sexual offense (which includes child molestation) must be sentenced to a split sentence that includes the minimum term of imprisonment as specified for the offense and an additional probated sentence of at least a year. However, under subsection (c)(1), the trial court has discretion to deviate from the mandatory minimum sentencing requirements set out in subsection (b), provided that the State and defense counsel have agreed to a sentence that is below the mandatory minimum, or if certain conditions are met. OCGA § 17-10-6.2(c)(1). Those conditions under OCGA § 17-10-6.2(c)(1) require that: (A) the defendant not have a prior conviction for a sexual offense; (B) the defendant did not use a deadly weapon or object during the commission of the crime; (C) the court has not found evidence of a relevant similar transaction; (D) the victim did not suffer intentional physical harm during the commission of the crime; (E) the offense did not involve the transportation of the victim; and (F) the victim was not physically restrained during the commission of the

offense. Under OCGA § 17-10-6.2(c)(1), all of the conditions must be met in order for the trial court to deviate from the mandatory sentencing requirements absent an agreement between the State and the defendant. If the trial court exercises sentencing discretion, it must make written findings supporting the deviation. OCGA § 17-10-6.2(c)(2); *Hedden v. State*, 288 Ga. 871, 874 (708 SE2d 287) (2011).

Based on the record before us, it is clear that there was no agreement between the parties for Carter, a first-time offender, to receive a sentence less than the mandatory minimum five-year sentence required for her child molestation conviction. See OCGA § 17-10-6.2(b), (c)(1). We thus consider whether the court was authorized to deviate from the mandatory minimum sentencing requirements in subsection (b) based on the factors set out in OCGA § 17-10-6.2(c)(1).

The State argues that its factual proffer during the plea hearing showed that Carter transported B. N. from Mississippi to Georgia, the two were in a romantic relationship, and the acts of child molestation occurred after the transport of B. N. According to the State, Carter was ineligible for a downward deviation to the mandatory minimum sentence based on OCGA § 17-10-6.2(c)(1)(E) because the crime involved the transportation of the victim. The State asserts that these facts are

distinguishable from *Maddox*, a case relied upon by the trial court, wherein we held that the State did not carry its burden to show that a sentencing deviation was prohibited. Contrary to the instant case, in *Maddox*, the State presented no evidence or argument at the plea hearing or the initial sentencing hearing that the crime involved the transportation of the victim. 374 Ga. App. at 739. Instead, the State contends that this case is more akin to *Avila v. State* — where the State presented evidence at the plea hearing that the defendant met the victim through a dating website, and eventually met in person when the defendant picked up the victim from her residence and drove her to a church parking lot where the two engaged in oral sex before the defendant dropped the victim at the entrance of her neighborhood. 333 Ga. App. 66, 68 (775 SE2d 552) (2015). In *Avila*, we held that

> it is undisputed that the appellant picked up the victim in his automobile from the front of her subdivision, transported her to a church parking lot, engaged in sex acts with the victim, and then transported her back to the subdivision. Thus, that the Appellant transported the victim to a location for purposes of committing the crime for which he stands convicted is clear.

Id. The defendant in *Avila* argued that the trial court retained discretion to deviate from the mandatory minimum sentence so long as the act of child molestation did not

occur during the transportation of the victim or the offense itself did not include transportation as an element of the crime. Id. at 69. This Court disagreed, pointing out that "[s]uch an interpretation would render the transportation provision essentially meaningless." Id. Rather, we clarified "that the aggravating factor which limits the trial court's discretion to deviate from the mandatory minimum sentence is the transportation itself, as it removes the victim from an area wherein the crime may have more easily been detected or where the victim could have more easily escaped." Id.

In the instant case, the State alleged at the plea hearing that B. N. disclosed that Carter had come to Mississippi in June and was hiding in B. N.'s grandparents' house. After the grandparents found out, Carter and B. N. took a bus to Georgia (and traveled away from the grandparents) in order to continue a romantic relationship and engage in acts such as kissing. Although the trial court found there was insufficient evidence to find that Carter transported B. N. "for the express purpose of molesting the victim," OCGA § 17-10-6.2 (c) (1) (E) does not explicitly outline any temporal restrictions between the transportation of the victim and the criminal conduct. See *Avila*, 333 Ga. App. at 69 (transportation of the victim can occur before the commission of the crime).

By contrast, a defendant also is disqualified from a downward sentencing deviation if the victim suffered intentional physical harm or was physically restrained, either of which occurred "during the commission of the offense." OCGA § 17-10-6.2(c)(1)(D)&(F). The statute "does not similarly require that the transportation of the victim occur 'during the commission of the offense' so as to limit the trial court's sentencing discretion, only that the offense 'involve' transportation of the victim." *Avila*, 333 Ga. App. at 70 (noting that the General Assembly's use of the phrase "during the commission of the offense" in certain subsections of a criminal statute made clear that it knew how to specify that a disqualifying event must occur while the crime was in process, rather than before the crime was attempted or after the crime was complete, and OCGA § 17-10-6.2(c)(1)(E) did not include such a limitation). Because the State's factual proffer showed that Carter left Mississippi with B. N. (transporting B. N. away from her grandparents) and traveled to Georgia in order to continue a romantic relationship with a minor, the State met its burden to show that Carter was ineligible for a downward deviation in sentencing under OCGA § 17-10-6.2 (c) (1) (E).[2] Carter's total sentence of twenty years' probation was thus void. See *State*

---

[2] It is for the General Assembly to clarify its intention if OCGA § 17-10-6.2(c)(1)(E) was not intended to encompass an offense such as the one committed

*v. Hillsman*, 368 Ga. App. 873, 876–77 (891 SE2d 440) (2023) (concluding that a sentence of ten years to serve five for armed robbery, which was below the statutory minimum sentence required under OCGA § 17-10-6.1(b)(1), was void because there was no agreement between the parties to depart from the mandatory minimum as set out in OCGA § 17-10-6.1(e)).

Carter counters that it would violate her protection from double jeopardy to increase her sentence once she has begun to serve it. *Maddox*, 374 Ga. App. at 737. However, "a defendant has no legitimate expectation of finality where the sentence was void, and thus a trial court is authorized to impose a new, and more severe, sentence even when a defendant has started serving the void sentence." Id. at 740 (citation modified). See also *von Thomas v. State*, 293 Ga. 569, 571 (2) (748 SE2d 446) (2013) ("a sentencing court has jurisdiction to vacate a void sentence at any time") (emphasis omitted). As explained above, because the trial court entered a void sentence, Carter has failed to show any violation of her Fifth Amendment protection against double jeopardy. See id. Accordingly, the trial court's order denying the

---

here, in which the minor victim was transported to a different location (away from legal custodians) in order for the offense of child molestation to be more easily committed without detection.

State's motion to correct void sentence is vacated, and the case is remanded to the trial court for resentencing in a manner not inconsistent with this opinion.

*Judgment vacated and case remanded with direction. Rickman, P. J., and Davis, J., concur.*